is a court counsel. My name is Kate Vizicky. I represent the United States in this government appeal. We ask this Court to reinstate the jury's considered verdicts in this case. The jury considered all of the evidence, all of the facts and testimony that came in at trial. They heard about how Mr. Lemoine, within one day of arriving in Minnesota, began renting storage spaces. They heard how he lied to the storage company employee who was helping him with his application. And they also heard about how those storage spaces later contained hundreds of thousands of dollars' worth of cocaine and methamphetamine. Having heard that evidence, the jury reasonably concluded that drug traffickers would not where an innocent person, a supposed bystander, could easily see it, find it, take it or report it to the police. Mr. Lemoine rented those storage spaces because he was aiding and abetting the possession of methamphetamine and cocaine. He knew about it and he was renting those spaces to help the drug trafficking organization. In his many, many visits to those storage spaces, it is almost inconceivable that he would not have realized that there was a huge wholesale quantity of drugs in a plastic Target storage shopping bag or within the car that he took Title II. The jury also heard about the controlled buy in this case. Counsel, is that really true? I mean, this was packaged in a bag, right? Multiple people had access to the storage shed here. I guess your argument is that he must have, because there's some evidence he may have been there before or frequently, that he must have looked into the bag? Your Honor, your question has a lot of pieces to it, so I'll kind of answer it according to the... And we don't know, do we, that he was there multiple times? He may have been there multiple times. Your Honor, that's not correct. The storage space employee, Ms. Graves, saw him there 15 to 20 times, she estimated. Okay. You're right. I'm sorry about that. There are 26 times that we can attribute to Lemoyne himself using the storage-based keypad records. Ms. Graves said 15 to 20 of those times he was there. Again, this is in the span of two months. So within two months, about eight weeks, Mr. Lemoyne is at that storage space, which is accessible to him according to the testimony and evidence in the record, and which he visited, and it has a huge, 90 pounds of methamphetamine in a target storage bag. Drug trafficking organizations would take care to secure their product. They wouldn't put it in a target storage space where someone that was completely innocent, was not part of their organization, could easily find it. Was there evidence to that fact introduced through one of the officers at trial, or is this an inference you're suggesting that the jury could have made? This is the jury's reasonable inference, and it's supported by case law from this court. This court has said multiple times, Ellison is probably the best case, that drug traffickers don't invite bystanders to serious crimes, that bystanders are unwelcome during the commission of a crime, precisely because they could call the police or other bad things could happen to the criminal organization. So in this case, there was ample evidence that Mr. Lemoyne was at the storage space over and over and over again, whether that is in the form of the storage space keypad records or the testimony of Ms. Graves, as his frequency of visits. He was there so frequently that they described themselves as friendly with each other, and she recalled specific details about him. The fact that he wore a safety vest, to the point where she thought he might be a municipal employee, like a city worker, she described him. So this was very well established in the record, that he was there at those storage spaces. And you say he lied when he rented it originally by claiming he was moving from Florida? Correct. As the evidence showed. Do you think that's a false exculpatory of some kind, or why is the lie significant? There's a couple of reasons it's significant, Your Honor. First, it's false, and there's no reason for him to lie and try to shift attention away from his activities. He said that he relocated from Florida, instead of saying that he relocated from Michigan, where he was actually from. It was a spontaneous lie that he offered up for really no discernible reason. Well, that's what I'm trying to understand. How is it incriminating to change the State? The jury was entitled to infer that somebody who started telling lies about the reason he was renting a storage space was conscious of his guilt and had reason to hide. He didn't lie about the reason he was renting it, did he? He lied about something completely unrelated to almost anything, it seems to me. Your Honor, he did lie about the reason he rented it, because the evidence showed he rented it to secure drugs. Well, setting that aside, I mean. He claimed that he had come to the storage space company for a storage of household goods following a move. Now, we know that he got there by plane, so he wasn't driving a huge truck to bring his goods cross-country. He came there by plane. He testified that his father dropped him off at the airport, and in plain fact, he didn't have household goods in the storage space, either the one in Lake Elmo that we have significant eyewitness testimony about, or the one in Woodbury. He had nothing that anybody, any rational jury, would consider to be a set of goods one would need after a household move. I'd like to ask some questions about count two, and I'm just not sure I quite understand exactly what the government's evidence is. Because, you know, we start with, like, just merely being present at the place where a drug transaction takes place isn't enough. And so we've got him being present, but that's not enough standing alone. And then we've got a lookout theory that nobody ever offered any evidence for. Nobody ever got anyone else to say he was a lookout. There's no evidence that he was acting in a way that he looked like a lookout. I mean, there are guys standing on street corners doing that thing, right? But there's none of that in this record. And so the lookout theory looks pretty unsubstantiated, and it doesn't seem to be much there. So then you're left with the access code. But it seems like this access code was used by a fair number of people, all of whom were maybe involved in this conspiracy, right? But nobody can say that LeMoyne's the dude who was there that day, right? And so it seems like that's kind of a reach to get to proof beyond a reasonable doubt with that set of facts. Now, obviously, the government thinks that that's, that they've got proof beyond a reasonable doubt. So what additional facts am I overlooking, because I'm guessing that's what must be going on, that the government believes pulls us all together? Yes, Your Honor. And again, I'll start a little bit further back in the wedge and take you through the government's evidence on this particular count. So, first of all, we respectfully push back on the idea that many people had constant access to the storage space. That's certainly the picture that LeMoyne in his testimony wanted to put forward. But the evidence focused on his actions, and rightly so, because he was on trial there. We know the eyewitness, Ms. Graves, saw him there 15 to 20 times. So at a minimum, he's there the majority of times that that storage space is accessed in two months. The jury was more than entitled to infer that for the times that Ms. Graves did not see them, whether it's nine times or six times, or 11 times or six times, that he was also there. The jury can make that reasonable inference because they knew that he was there 15 to 20 of those 26 times. How long before the deal was the storage facility accessed? Precisely 30 minutes, Your Honor. So the defense theory was that Martinez went there by himself, got the drugs, and then for some reason picked up LeMoyne on the way to the drug deal? Yes, Your Honor. That's my understanding of their argument. Do you think that's not plausible? It is not plausible, Your Honor. And the evidence in this case shows that the storage space was accessed by LeMoyne. He was seen there. And the convoluted theory that Martinez went there, then picked up LeMoyne, and then brought LeMoyne to a drug transaction doesn't wash with what we know about his activities. Returning to the government's proof as a whole, as you asked about, Your Honor, we go back further in the wedge. The defendant is there at the pre-meeting at the St. Paul Cafe. He's sitting in the car as his co-defendant, Martinez, goes into the cafe to meet with the confidential informant. The next day... Which would be kind of consistent with someone who's not really actually involved in the drug deal, right? I mean, we do have guys that are off on some other joint experience, you know, they're going to do something else. And the guy who's not involved in the drug deal hangs in the car while the drug deal takes place somewhere else, right? I mean, that's not an unusual scenario. I've tried a lot of these cases, and I've seen that a number of times. And that's certainly an alternative hypothesis, but the jury did not accept that hypothesis. The jury rejected that hypothesis, and under the standard here... So I'm just standing the burden of proof on it, or the standard of review on its head here? In this case, Your Honor, unfortunately that's true. In this case, this court, as well as the district court, was required to accept all reasonable inferences in favor of the jury's verdict. So, continuing on from the St. Paul Cafe, then Lemoyne shows up at the drug deal at the Applebee's in Woodbury, 24 hours later, 30 minutes after the storage space, which he is known to frequent, is accessed, and he sits again in the car. These individuals were working in concert, together, throughout this entire course of conduct, over the course of a day. And if that were not enough, he's also wearing the vest that the two men use to make themselves look like city workers or municipal workers, as an effort to provide bystanders a rational reason why they would be driving around making a lot of short stops all over town. So if you look at it from the picture, not just the three minutes in the car, but the picture of the entire course of the government's proof, the evidence is very strong. The jury rationally convicted him, and under the standard, that conviction should stand. Now, on the new trial order, the alternative, I gather your argument from your brief is the judge erred on the acquittal because he accepted the defendant's testimony. Now, on the new trial order, are we required to accept the judge's acceptance of the defendant's testimony as credible and then review on that basis whether there would be a miscarriage? I mean, in other words, if the defendant testified that he was innocent and the judge believed him, is that sufficient to justify a new trial? It is not, Your Honor. I think Bertling is the case that's most apposite here, and what Bertling says is that the district court has to consider the evidence as a whole and in context, the government's case as a whole and in context. It can't simply ignore important pieces of evidence, important facts, and focus solely on the defendant's testimony  Not only that, but the defendant's testimony was so inherently incredible and the district court did not engage at all with the significant impeachment of the defendant's testimony such that it really ignored that key piece of evidence as well. Beyond simply excising the government's case from its order, the district court really didn't grapple with the impeachment at all. It simply credited the defendant and then concluded there was a miscarriage of justice. But you think it's an abuse of discretion because the judge didn't adequately analyze and explain the other evidence? For that reason, Your Honor, and also because its reliance on the defendant's testimony alone, certainly it can make a credibility determination on that looser standard, but because his testimony was so substantially impeached, it was an abuse of discretion to do so. Well, is the argument really that's being advanced as this? I mean, it seems to me that it's pretty plain that the judge can re-weigh the evidence, the judge can make independent credibility determinations, which inherently means that the judge is empowered to dismiss, discount, and sometimes completely ignore a certain witness's testimony, saying, I find it to be lacking in credibility, right? And, you know, we review all of that on an abuse of discretion standard and usually we give great weight to that. But we do have a line of cases that still say that, well, even if we do that, we can still find an abuse of discretion if our independent review of all the evidence leads us to believe that it doesn't preponderate so heavily against the verdict that err miscarriage of justice. Now, it seems to me what you're really arguing is the last for us, that you think the judge is wrong because he ignored certain testimony, gave credence to other testimony, but in the end, we should look at all the evidence and say that it doesn't preponderate such that there's a miscarriage. I agree complete with your statement, Your Honor. I also note I only have about 50 seconds remaining of my time, so unless the Court has any other questions, I'd like to reserve a few seconds for rebuttal. Very well. Thank you for your argument. Mr. Richman, the Court appreciates you accepting the appointment in this case. Thank you, Your Honor. May it please the Court, my name is Robert Richman. I represent Gabriel Lemoyne in this appeal. The District Court acted properly in granting judgment of acquittal because no reasonable jury could have found Mr. Lemoyne guilty beyond a reasonable doubt. The government's case consisted of three witnesses. There was no evidence Mr. Lemoyne ever possessed drugs, no evidence he ever was near drugs in plain view, no evidence he ever made a drug sale, no evidence he ever discussed drug trafficking. We had a confidential informant who had inside knowledge about this conspiracy, who knew nothing about Mr. Lemoyne. The person who rented the apartment in Woodbury for Mr. Martinez knew nothing about Lemoyne. Seven weeks of surveillance developed no evidence against Mr. Lemoyne. There was a meeting surveilled of the co-conspirators of uncle and nephew and the other co-conspirators at a bank. Mr. Lemoyne was not there. There was no evidence of who put the drugs in the storage units or when those drugs were put there, but there is no dispute that Mr. Martinez had access to the storage unit. He was there when the storage unit was rented. He handed the money to Mr. Lemoyne to pay for the storage unit, and the government has taken the position in Mr. Martinez's sentencing that he was responsible and had access to the storage unit. So there was independent evidence that your client was at the storage facility multiple times. Yes, Your Honor. Did your client, when he testified, address any reasons why he was there? He did. He said that he said that he moved things in and out of the storage unit. He moved a power washer into the storage unit. I mean, I can't say that he accounted for 20 visits to the storage unit, but in general terms, he testified that when he needed to put something into the storage unit or take something out of the storage unit, he went there. But there was no evidence that all of the stuff that was in that storage unit belonged to Mr. Lemoyne. In fact, the evidence was that it belonged to other people. He had no reason to be rummaging through target bags or anything else that was in that storage unit. The district court did not re-weigh the evidence or resolve conflicts in favor of the defendant. Although at the close of the government's case, the district court gave the government the benefit of the doubt by denying the motion for judgment of acquittal as to counts 2 through 5, the court's reasoning at the conclusion of the government's case would have supported judgment of acquittal then. The court said that the court at that point dismissed the judgment of acquittal with respect to the conspiracy count, but Mr. Lemoyne could not have aided and abetted on the substantive counts without also being guilty of the conspiracy. And the court made very clear in ruling on the conspiracy that there was no evidence that Mr. Lemoyne collaborated with anyone to possess drugs with intent to distribute. That conclusion applies with equal weight to the substantive counts, to the aiding and abetting the four substantive counts. And so the government's argument that somehow the court changed its thinking because it adopted what Mr. Lemoyne said is simply not true. The court allowed the case to go forward but Mr. Lemoyne's testimony which was not impeached in any significant way or rebutted simply corroborated what the court had already concluded at the conclusion of the evidence, the government's evidence which was simply that this evidence suggested that Mr. Lemoyne was innocent, that he had been duped into being an unknowing participant in a drug conspiracy. But the judge also said that there was evidence at this stage of the trial. He could have taken it away and dismissed everything. He didn't. He said that there was evidence that a jury could infer that he was in constructive possession of the narcotics. There was evidence that because he was wearing the high visibility vest and that he was in and out in his locations that they could infer that he was involved in the conspiracy or not in the conspiracy but in the transaction, the specific transaction in count two and that he talks about Lemoyne being outside the car, inside the car, you know, that whole conversation, you know. Now if all that evidence is enough to say there's a jury question, isn't that evidence enough to say that there was evidence from which a jury could by inference convict? And isn't the real argument here one that really goes to should the new trial order stand? Well, Your Honor, obviously the standard for the new trial order is more lenient than for judgment of acquittal but we are vigorously defending judgment of acquittal because while the court... Well, of course the judge could be wrong, right? We could still look at the evidence and say there wasn't enough there but, you know, assuming that Judge Blackwell has it right... Well, Your Honor, I... Which we won't do but... I don't agree that once you deny a motion for judgment of acquittal at the close of the government's case that there is nothing more to review at the close of the evidence. I agree with that entirely because I can look at the close of the evidence and say I was mistaken. I don't believe that was correct, which is what happened here, right? I think that is what happened here, Your Honor, but I think that having heard all of the evidence, the court went back to consider the evidence which it said got the government barely, the court made very clear, barely over the line and made a determination that those facts were not... did not lead to reasonable inferences led to speculation. And we would suggest, Your Honor, that it's not a reasonable inference that people who wear safety vests without an apparent reason are involved in drug dealing. That is not a reasonable inference. That is speculation. It's not... Why not? Why not? I mean, you know one of them is involved in drug dealing indisputably and, as you just said, they had no legitimate reason to be wearing them, so why isn't it reasonable to think they were wearing them to facilitate the drug deal? Well, because in no way does it facilitate the drug deal. Why doesn't it facilitate by giving them an apparent reason to be conducting their activity? Well, I don't think that wearing a safety vest explains why two men are sitting in a car in the corner of a parking lot. No, but I thought the argument was that they were engaged in multiple stops throughout the day that would otherwise look suspicious, but if they had a facade that made them look like they were engaged in legitimate work, then it would not arouse the same kind of suspicion. The evidence about the multiple stops was based on GPS data. There's no evidence that Mr. Lemoyne participated in multiple stops or who was present in the... I'm forgetting the type of car, but the vehicle that was being tracked... It was Martinez's vehicle? It was Martinez's vehicle. There was no evidence that Mr. Lemoyne ever drove that vehicle. So, I mean, Mr. Lemoyne showed up in an Applebee's parking lot wearing a high-visibility vest. I don't think that that leads to the conclusion that therefore he was involved in a drug deal, Your Honor. Similarly, the fact... You said it has no... I thought you said it has no... there's not reasonable inference that it could have been a part of the package. We have no idea what was happening at short-term stops. The testimony was that based on GPS data, there were short stops at gas stations and shopping centers that is equally consistent with buying gas. Similarly, the fact that Mr. Lemoyne was present at that controlled buy at the Applebee's does not lead to the reasonable inference that he was there as a lookout without something more. The fact that there was an earlier meeting between the C.I. and Martinez the day before, there was no need for a lookout on that day. And the Court's questions about why would Martinez pick up Lemoyne to then go to this drug deal, well, the evidence was that immediately following this three-minute drug deal, they proceeded to the apartment complex in Burnsville where Mr. Lemoyne paid the rent for the apartment that was rented in his name. So, I think it is completely reasonable to assume that he was picked up because they had joint business together to pay the rent, but that Martinez made a stop along the way. But why would Martinez want to create a potential witness to a crime rather than commit the crime first and then pick up the payer? I agree, Your Honor, that there are certain facts in this case that arouse suspicion, but I don't believe and I think the district court was correct in concluding that that suspicion does not rise to the level of proof beyond a reasonable doubt. This case is extremely close to the facts of the case. The defendant was the girlfriend of a drug dealer. She was present at three of the boyfriend's drug sales. There were scales and packaging material found in the house and she told the police, just like Mr. Lemoyne testified here, that she had no idea her boyfriend was a drug dealer. And this court said that while some of those facts may lead to suspicion, there is a critical, this is a quote, there is a critical line between suspicion of guilt and guilt beyond a reasonable doubt. The same thing is true here. The district court found at the close of the government's evidence, quote, Lemoyne might have been deceived and was unknowingly involved in a narcotic scheme. As I said, there may have been some suspicious circumstances, but it is simply not enough to cross the barrier of proof beyond a reasonable doubt. Turning briefly to the motion for a new trial. Your view on this question, whether the judge can just credit the defendant's testimony and grant a new trial on that basis or whether there needs to be more analysis of the record as a whole? I think there does need to be more analysis and there was more analysis and I come back to what the judge said at the conclusion of the government's case, that the evidence suggests that Mr. Lemoyne was duped. So the court did not simply say, well, this seems like a fine fellow, I'm going to go with what he says. He expressed severe doubts at the close of the government's case and then credited Mr. Lemoyne's innocent explanation for some of those suspicious circumstances. He did, I think this court does have to defer to the courts finding that the government did not seriously impeach the Mr. Lemoyne's testimony in a way that called that testimony into question. Do we defer to that or do we take a look at it ourselves on an abuse of discretion review? I mean, maybe it's, well, it's important, I guess. I think that it is an abuse of discretion standard, Your Honor, and the court did not abuse its broad discretion here. The court determined that a miscarriage of justice would occur if the verdict was allowed to stand, and that was based on his, the court's firm belief which arose at the close of the government's case that Mr. Martinez, I'm sorry, Mr. Lemoyne had been duped. That finding was consistent with the evidence. The government's case is not the case of a miscarriage of justice.  and it is the case of a miscarriage of justice and it does not rise to the level of proof beyond a reasonable doubt. And therefore, I would ask the courts to affirm the judgment of acquittal of the district court. Thank you, Your Honor. Very well. Thank you for your argument. Your Honor, the jury in this case weighed all of the evidence and made all of the inferences as it was its duty to do. The jury thoughtfully and reasonably convicted Lemoyne of three counts. The district court substituted its own preferences and arrived at a different conclusion. We know that the district court improved and improperly weighed Mr. Lemoyne's testimony as my colleague states. The only thing that changed between the district court pointing out all the evidence that would support a denial of a Rule 29 as to counts 2 through 5 then became the evidence that supported the district court's erroneous grant of an acquittal. Well, do you disagree that a district court can kind of reconsider the Rule 29 issue after the close of the government's evidence and say, look, it was really close and I've changed my mind? Your Honor, what the district court can do is consider and grant a Rule 29 motion after a trial, but that is a very rare instance across all kinds of criminal cases. And it cannot do so based on weighing the evidence for itself or making credibility determinations. There may be other situations where it absolutely can, but a credibility determination such as this court made, the district court made, is not one of those situations. But you don't have a problem with the judge letting the case go to verdict and then taking more time to review the record and make a more deliberate decision on Rule 29. The government typically wouldn't favor the judge having to dismiss the cases before it goes to a jury. Yes, Your Honor, Rule 29 and its procedures exist for a reason, and there certainly is a role for a post-trial Rule 29. But let's look at what the district court did here. It orally and in writing pointed out the evidence in the first Rule 29 motion, the mid-trial Rule 29 motion, that supported the government's case, that made it a proper decision to deny the Rule 29 as to counts 2 through 5. And then it turned around and used that exact same evidence in its post-trial judgment of acquittal. So again, the only thing that changed was Mr. Lemoine's testimony, testimony that was not credible and which the district court improperly relied on. So for those reasons, Your Honor, we ask this court to reinstate the verdicts of guilty, to overturn the district court's order in all respects, and to deny, including the grant of a conditional new trial. Thank you. All right. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course.